CATAWBA MEMORIAL HOSPITAL, PETITIONER-PLAINTIFF v. NORTH CAROLINA DEPARTMENT OF HUMAN RESOURCES, RESPONDENT-DEFENDANT AND AMI FRYE REGIONAL MEDICAL CENTER, INTERVENOR-RESPONDENT-DEFENDANT

No. 9210SC821

(Filed 16 November 1993)

1. **Administrative Law and Procedure § 47 (NCI4th)— request for declaratory ruling—prior agency decision determining same issues—good cause for denial of request**

Good cause exists for denial of a request for a declaratory ruling where the denial is based on the existence of a prior agency ruling which necessarily required an interpretation of the same statute which is the subject of the request for declaratory ruling. Therefore, petitioner's request for a declaratory ruling was properly denied where the declaratory

ruling would require the agency to determine the same issue determined in the contested case hearing as to whether former N.C.G.S. § 131E-176(16)f applied to petitioner's proposed open-heart surgery facility and therefore whether the annual operating expenses of the facility would equal or exceed one million dollars, thus making it a new institutional health service and requiring it to obtain a Certificate of Need. N.C.G.S. § 150B-4(a).

**Am Jur 2d, Administrative Law § 465.**

2. **Administrative Law and Procedure § 54 (NCI4th); Hospitals and Medical Facilities or Institutions § 16 (NCI4th) — certificate of need required by final agency decision — appeal to superior court — improper forum**

The superior court lacked jurisdiction to enter an order reversing the final decision of the DHR requiring petitioner to obtain a certificate of need prior to opening a new open-heart surgery facility, since petitioner's appeal to the superior court sought review only of DHR's refusal to issue a declaratory ruling in response to petitioner's request, and N.C.G.S. § 131E-188, which governs appeals from final agency decisions regarding the issuance of a CON, provides that such appeals are to be filed in the Court of Appeals, not the superior court.

**Am Jur 2d, Administrative Law § 560; Hospitals and Asylums § 3 et seq.**

3. **Administrative Law and Procedure § 47 (NCI4th) — requirement of CON prior to offering service — final agency decision — res judicata — complaint for declaratory judgment properly dismissed**

The final agency decision which determined that petitioner's operating expenses for the first three years for an open-heart surgery facility would exceed one million dollars and that petitioner was therefore required to obtain a CON was a judicial decision which barred, as *res judicata*, petitioner's complaint for a declaratory ruling as to the same issues, and the superior court's dismissal of petitioner's declaratory ruling complaint was therefore proper.

**Am Jur 2d, Administrative Law § 465.**

Appeal by all parties from order entered 3 March 1992, as amended 4 March 1992, by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 16 June 1993.

On 14 February 1990, petitioner Catawba Hospital (hereinafter Catawba) wrote respondent North Carolina Department of Human Resources (hereinafter the Agency) concerning Catawba's plans to develop an open heart surgery facility. The purpose of Catawba's letter to the Agency was to obtain a determination and affirmation that the hospital would not require a certificate of need (hereinafter CON) before commencing development of the new surgical facility.

G.S. § 131E-178 requires issuance of a CON prior to construction or operation of a new health care facility where the capital expenditure for the new service will exceed $2,000,000, G.S. § 131E-176(16)b, or the "annual operating costs" will exceed $1,000,000, G.S. § 131E-176(16)f (repealed 1993). In response to Catawba's letter, the Agency asked Catawba to furnish specific financial and operating projections so that the Agency could determine whether Catawba's proposal would require issuance of a CON.

On 15 March 1990, Catawba wrote a letter to the Agency containing its projected operating expenses for the first three years of operation. Catawba's projected operating expenses were below the $1,000,000 threshold for each of the first three years. However, in evaluating Catawba's projections, the Agency found that the hospital had overlooked certain essential items of expense. Also, an Agency comparison of Catawba's financial projections to financial information from similar existing and proposed open heart surgery programs indicated that Catawba's operating expenses would exceed $1,000,000 in each year of operation.

Based on its evaluation of Catawba's financial projections, and its comparison of those projections with the expenses of other facilities, the Agency advised Catawba on 25 April 1990 that the hospital would be required to obtain a CON before proceeding with an open heart surgery program.

On 24 May 1990, Catawba petitioned the Office of Administrative Hearings for a contested case hearing and thereafter moved for a decision recommending summary judgment. In support of its motion, Catawba filed its 15 March 1990 letter to the Agency which contained its projected operating expenses. In opposition to the motion, the Agency offered the affidavits of its Project Analyst

and its CON Section Chief. These affidavits concluded that Catawba's operating expenses would exceed the $1,000,000 threshold in each of the facility's first three years of operation.

The Administrative Law Judge, adopting Catawba's projected operating expenses, concluded that the surgical facility's operating expenses would not exceed the statutory threshold and would not require issuance of a CON. The Agency excepted to the recommended decision and filed its exceptions for review by the final agency decision maker.

On 12 April 1991, the case was called for hearing for a final agency decision before the Director of the Agency's Division of Facility Services, Mr. John Syria. During oral arguments, Catawba's counsel handed Mr. Syria a Request for Declaratory Ruling. The request sought, in pertinent part, a declaration that Catawba would not be required to obtain a CON if "the annual operating costs of the service [would] not exceed $1,000,000 in the first year[.]"

On 16 April 1991, the Agency rendered a final agency decision which concluded that Catawba's annual operating expenses would exceed $1,000,000 in each of the first three years of operation and that Catawba would be required to obtain a CON before commencing operation of the proposed open heart surgery facility. Catawba did not appeal this final agency decision.

On 3 May 1991, Mr. Syria responded by letter to Catawba's Request for Declaratory Ruling. Mr. Syria denied Catawba's request, explaining that Catawba's request was not filed until after the official record in the contested case had been closed. He further stated that although the facts set forth in a request for declaratory ruling are ordinarily taken as true, the facts in the instant case were established by the record in the contested case. Mr. Syria therefore declined to issue a declaratory ruling on the facts as set forth in the request.

On 5 June 1991, Catawba filed in the Wake County Superior Court a Petition for Judicial Review and Complaint for Declaratory Judgment. The petition only sought review of the denial of its Request for a Declaratory Ruling. Additionally, Catawba sought, pursuant to G.S. § 1-253, a declaratory judgment interpreting former G.S. § 131E-176(16)f. On 8 November 1991, AMI Frye Regional Medical Center was allowed to intervene.

**CATAWBA MEMORIAL HOSPITAL v. N.C. DEPT. OF HUMAN RESOURCES**

[112 N.C. App. 557 (1993)]

On 3 March 1992, the superior court issued an order reversing the final agency decision in the contested case. The court construed former G.S. § 131E-176(16)f as requiring only that the facility's operating expenses not exceed $1,000,000 in the first year of operation. The court declared that the Agency exceeded its statutory authority by requiring that the facility's operating expenses not exceed $1,000,000 in the first three years of operation.

On 4 March 1992, the superior court issued an amended order reversing the Agency's 3 May 1991 denial of Catawba's request for declaratory ruling, and dismissing Catawba's complaint for a declaratory judgment on the ground that the complaint was rendered moot by the court's ruling with respect to Catawba's Petition for Judicial Review under G.S. § 150B-43, *et seq*. The superior court concluded that it had adequately declared Catawba's rights regarding its proposed surgical services. All parties appeal.

*Petree Stockton, by Noah H. Huffstetler, III, L. Elizabeth Henry, and Gary S. Qualls, for petitioner Catawba Memorial Hospital.*

*Attorney General Lacy H. Thornburg, by Associate Attorney General Margaret C. Ciardella, and Associate Attorney General Sherry L. Cornett, for respondent North Carolina Department of Human Resources.*

*Bode, Call & Green, by Robert V. Bode, S. Todd Hemphill and Diana E. Ricketts, for intervenor-respondent AMI Frye Regional Medical Center.*

MARTIN, Judge.

The parties raise numerous issues by this appeal. We find three to be dispositive and, in view of our decisions with respect thereto, conclude that it is unnecessary to address the remainder. For the reasons set forth herein, the decision below is reversed in part and affirmed in part.

RESPONDENTS' APPEAL

[1] By their first assignment of error, respondents contend that the superior court erred by reversing the Agency's denial of Catawba's request for a declaratory ruling. Declaratory rulings under the Administrative Procedure Act are governed by G.S. § 150B-4, which provides in pertinent part:

> (a) On request of a person aggrieved, an agency shall issue a declaratory ruling as to the validity of a rule or as to the applicability to a given state of facts of a statute administered by the agency or of a rule or order of the agency, *except when the agency for good cause finds the issuance of a ruling undesirable.* (Emphasis added.)

Respondents argue that because the questions raised in Catawba's request to the Agency for a declaratory ruling were identical to the questions decided by the Agency in its final agency decision, the Agency had good cause to decline Catawba's request for a declaratory ruling. We agree.

The issue addressed by the decision maker in the contested case was "[w]hether the annual operating costs of Catawba's proposed open heart surgical service will equal or exceed one million dollars, thus making it a new institutional health service, requiring it to obtain a Certificate of Need." The Agency concluded that Catawba would be required to obtain a CON and that under former G.S. § 131E-176(16)f it was proper for the Agency to analyze the proposed service's annual operating costs for a three year period.

In its request for a declaratory ruling, Catawba sought,

> a declaration that it is entitled to offer open heart surgical services without obtaining a certificate of need so long as the capital expenditures associated with development of the service do not exceed $2,000,000, [and] the annual operating costs of the service will not exceed $1,000,000 in the first year . . . . In addition, Catawba requests a declaration that the three-year standard the Agency has applied to Catawba's proposal in determining the applicability of N.C.G.S. § 131E-176(16)f is an invalid rule.

Clearly, the issues to be addressed in deciding the contested case were virtually identical to the issues which Catawba sought to have determined by way of its requested declaratory ruling. Both actions required the Agency to determine the applicability of former G.S. § 131E-176(16)f to Catawba's proposed open heart surgery facility. As stated by Director Syria in his letter denying Catawba's request for a declaratory ruling, the interpretation sought by Catawba was included in the decision in the contested case. Furthermore, Catawba did not approach the Agency for a declaratory ruling until after the official record in the contested case had

been closed. Whereas a declaratory ruling by definition involves the application of a statute or agency rule to a given state of facts, the facts regarding Catawba's proposed surgical services were established by the record in the contested case.

We hold good cause exists for denial of a request for a declaratory ruling where the denial is based on the existence of a prior agency ruling which necessarily required an interpretation of the same statute which is the subject of the request for declaratory ruling. To hold otherwise would be to require an agency to twice decide the same case, between the same parties, by applying the same statute to the same facts. We are convinced that the Administrative Procedure Act was not intended to allow such unnecessary repetition. Thus, the Agency's denial of Catawba's request was for good cause, and we must reverse that part of the superior court's order which reversed the Agency's denial of Catawba's request for declaratory ruling.

[2] Respondents also assign error to that portion of the superior court's order which reversed the 16 April 1991 final agency decision. Respondents argue that the superior court lacked jurisdiction to enter an order reversing the final agency decision. We agree.

The record shows, and the parties agree, that Catawba did not perfect an appeal of the final agency decision. Rather, Catawba's appeal to the superior court only sought review of the Agency's refusal to issue a declaratory ruling in response to Catawba's request. Moreover, G.S. § 131E-188, which governs appeals from final agency decisions regarding the issuance of a CON, provides that such appeals are to be filed in this Court, not the superior court. N.C. Gen. Stat. § 131E-188; *Iredell Mem. Hosp. v. N.C. Dept. of Human Resources*, 103 N.C. App. 637, 406 S.E.2d 304 (1991). Thus, the superior court had no jurisdiction to consider the final agency decision and that decision, not having been appealed, remains binding on the parties.

PETITIONER'S APPEAL

[3] Catawba assigns error to the portion of the superior court's order which dismissed Catawba's complaint for declaratory judgment on the ground that it was moot. The superior court ruled that Catawba's complaint was moot on the ground that it had adequately determined Catawba's rights under former G.S. § 131E-176(16)f when it reversed the final agency decision. Catawba

argues that its complaint for a declaratory judgment will no longer be moot if we reverse the superior court's decision in favor of Catawba. Because we have reversed the superior court's decision in favor of Catawba, we must now determine whether dismissal of Catawba's complaint for declaratory judgment was proper. We hold that Catawba's complaint was properly dismissed, although on grounds other than mootness.

As we have previously noted, Catawba failed to appeal the final agency decision in the contested case. "[A] final judgment, rendered on the merits, by a court of competent jurisdiction, is conclusive of rights, questions and facts in issue, as to the parties and privies, in all other actions involving the same matter." *Masters v. Dunstan*, 256 N.C. 520, 523, 124 S.E.2d 574, 576 (1962), (*quoting Bryant v. Shields*, 220 N.C. 628, 634, 18 S.E.2d 157, 161 (1942)). Such a final judgment will bar a subsequent action involving the same issues between the same parties. *Thomas M. McInnis & Assoc., Inc. v. Hall*, 318 N.C. 421, 349 S.E.2d 552 (1986); *see also, Cannon v. Cannon*, 223 N.C. 664, 28 S.E.2d 240 (1943).

Without question, Catawba's declaratory judgment action and the contested case involved the same parties: Catawba and the Agency. Likewise, we are persuaded that the issues addressed in the final agency decision are identical to the issues raised in Catawba's declaratory judgment action.

The central issue in both cases was whether, under former G.S. § 131E-176(16)f, Catawba would be required to obtain a CON prior to offering its proposed open heart surgical services. A CON would be required if Catawba's "annual operating costs" exceeded $1,000,000. N.C. Gen. Stat. § 131E-176(16)f (repealed 1993). However, the phrase "annual operating costs" is not defined by the statute. Thus, in rendering a decision in the contested case, the decision maker was required to interpret the meaning of the phrase "annual operating costs." The decision maker concluded that "the term 'annual operating costs' in the statute is not limited to annual operating costs in the first year."

In its complaint for declaratory judgment, Catawba prayed for a declaration that "[a]s a matter of law, the $1,000,000 limitation on operating costs set forth in N.C.G.S. § 131E-176(16)f applies to the operating costs for the first year the service is offered . . . ." Thus, Catawba was seeking a declaratory judgment regarding a matter which it previously litigated in the contested case and

which was resolved against it in the final agency decision. As we have said, the final agency decision was never appealed and remains binding on the parties.

Although the contested case decision was an administrative decision, it may nevertheless bar Catawba's request for a declaratory judgment under the doctrine of *res judicata*. As a general rule, "[a]n administrative decision denying or dismissing a party's claim on the merits precludes such party from obtaining, in a judicial proceeding not designed for review of the administrative decision, the relief denied by the administrative agency, whether upon the same ground as urged in the administrative proceeding, or upon another ground." 2 Am. Jur. 2d *Administrative Law* § 502. In *In Re Mitchell*, 88 N.C. App. 602, 364 S.E.2d 177 (1988), this Court stated:

> Whether an administrative decision is *res judicata* depends upon its nature; decisions that are "judicial" or "quasi-judicial" can have that effect, decisions that are simply "administrative" or "legislative" do not. Though the distinction between a "quasi-judicial" determination and a purely "administrative" decision is not precisely defined, the courts have consistently found decisions to be quasi-judicial when the administrative body adequately notifies and hears before sanctioning, and when it adequately provides in the legislative authority for the proceeding's finality and review.

*Id.* at 605, 364 S.E.2d at 179. Thus, we examine the legislative authority which governs contested cases involving certificates of need to decide whether the final agency decision was a "judicial" decision.

G.S. § 131E-188(a) provides:

> After a decision of the Department to issue, deny or withdraw a certificate of need or exemption or to issue a certificate of need pursuant to a settlement agreement with an applicant to the extent permitted by law, any affected person, . . . shall be entitled to a contested case hearing . . . .

G.S. § 131E-188(b) provides that "[a]ny affected person who was a party to a contested case hearing shall be entitled to judicial review of all or any portion of any final decision of the department . . . ."

EMPIRE POWER CO. v. N.C. DEPT. OF E.H.N.R.

[112 N.C. App. 566 (1993)]

Clearly, the foregoing sections adequately provide for the finality and review of the final agency decision in the present case. Thus, we conclude that the final agency decision was a judicial decision which barred, as *res judicata*, Catawba's complaint for declaratory judgment. Based on the foregoing conclusion, we hold that the superior court's dismissal of Catawba's declaratory judgment complaint was proper. A judgment which is correct must be affirmed even though the reason stated for its entry is incorrect. *Payne v. Buffalo Reinsurance Co.*, 69 N.C. App. 551, 317 S.E.2d 400 (1984).

In summary, we reverse that part of the order of the superior court which reversed the final agency decision of the respondent Agency requiring the petitioner to obtain a certificate of need before providing the proposed open heart surgical services, as well as the decision of the respondent Agency denying Catawba's request for a declaratory ruling. The order of the superior court dismissing Catawba's complaint for declaratory judgment is affirmed.

Reversed in part, and affirmed in part.

Chief Judge ARNOLD and Judge COZORT concur.