NO. COA13-300

NORTH CAROLINA COURT OF APPEALS

Filed: 18 February 2014

EQUITY SOLUTIONS OF THE
CAROLINAS, INC.,
            Petitioner,

    v.                                    Wake County
                                          No. 10 CVS 15729
NORTH CAROLINA DEPARTMENT
OF STATE TREASURER,
            Respondent.


    Appeal by petitioner from order entered 11 September 2012 by
Judge W. Osmond Smith, III in Wake County Superior Court.  Heard
in the Court of Appeals 9 September 2013.


> *Ward and Smith, P.A., by A. Charles Ellis and Joseph A.*
> *Schouten, for petitioner-appellant.*
>
> *Attorney General Roy Cooper, by Assistant Solicitor General*
> *Gary R. Govert, Special Deputy Attorney General K.D. Sturgis,*
> *and Special Deputy Attorney General M.A. Kelly Chambers, for*
> *respondent-appellee.*


    GEER, Judge.


    Petitioner Equity Solutions of the Carolinas, Inc. appeals
from the trial court's order affirming the North Carolina
Department of State Treasurer's decision to deny Equity Solutions'
request for a declaratory ruling and dismissing Equity Solutions'
petition for judicial review of the State Treasurer's decision.

On appeal, while Equity Solutions contends that the trial court applied an improper standard of review when reviewing the State Treasurer's decision to deny Equity Solutions' request for a declaratory ruling, we hold that the trial court employed the correct standard of review.

Further, Equity Solutions contends that the State Treasurer in fact issued a "*de facto* ruling" against Equity Solutions on the merits that the trial court should have reviewed. We disagree. The State Treasurer never rendered a declaratory ruling, and the merits of Equity Solutions' arguments were, therefore, not before the trial court and are not before this Court.

### Facts

Equity Solutions is a business that identifies the possible existence of surplus funds remaining from foreclosure sales and contacts people or entities it believes are entitled to some or all of the surplus funds. After then entering into an agreement with the owner of the surplus funds, Equity Solutions files before the clerk of the superior court holding the surplus funds a special proceeding pursuant to N.C. Gen. Stat. § 1-339.71 (2013).

Equity Solutions asserts that it attached to its "Petition for Surplus Funds" initiating the special proceeding a copy of its agreement with the owner of the surplus funds, which purports to assign the right to the funds to Equity Solutions in exchange for

payment of a percentage of the amount of the funds. If the clerk of court allows the petition and directs that the foreclosure surplus funds be paid to Equity Solutions, then Equity Solutions pays the owner of the surplus funds the portion of the funds designated in the agreement.

The State has contended that Equity Solutions' business constitutes the recovery of abandoned and unclaimed property governed by the Unclaimed Property Act, N.C. Gen. Stat. §§ 116B-51 *et seq.* (2013). N.C. Gen. Stat. § 116B-78(a1) (2013) governs an "agreement . . . if its primary purpose is to locate, deliver, recover, or assist in the recovery of property that is distributable to the owner or presumed abandoned." Agreements covered by the statute must be in writing and include certain disclosures regarding the property at issue and the fee being charged for the property's recovery. N.C. Gen. Stat. § 116B-78(b). The statute also generally limits the maximum allowable property finder's fee. N.C. Gen. Stat. § 116B-78(b)(6). A violation of the provisions of the statute constitutes an unfair or deceptive act or practice in violation of N.C. Gen. Stat. § 75-1.1 (2013). N.C. Gen. Stat. § 116B-78(g).

On 11 May 2010, the Attorney General of North Carolina issued an investigative demand to Equity Solutions seeking documents relating to Equity Solutions' business, claiming that it involved

the recovery of abandoned or unclaimed property located in North Carolina. In April and June 2010, Allen Martin, an employee of the State Treasurer's office, sent letters to two county clerks of court stating that the agreements between Equity Solutions and its clients filed by Equity Solutions in superior court violated N.C. Gen. Stat. § 116B-78 and were, therefore, invalid.

On 18 June 2010, Equity Solutions submitted a letter to the State Treasurer describing its business model and attaching two sets of business documents that Equity Solutions claimed were representative of those it had used in the past and those it planned to use in the future. Equity Solutions requested that the State Treasurer issue "a declaratory ruling as to the applicability of N.C. Gen. Stat. § 116B-78 to the assignment agreements which Equity Solutions has employed in its business operations in the past . . . and the agreements it intends to employ in the future . . . ."

On 13 August 2010, the State, through the Attorney General and the State Treasurer, filed an action against Equity Solutions and several individuals alleging claims for racketeering, unfair and deceptive practices, and unjust enrichment (the "enforcement action"). The complaint alleged that the assignment agreements referred to in Equity Solutions' request for a declaratory ruling were, in fact, "sham agreements" that were not supported by

consideration. The complaint further alleged that Equity Solutions' business model included inducing "the apparent owners to agree to pay defendant Equity Solutions a 'contingency fee' and other fees and charges" that exceed the statutory maximum property finder's fee under the Unclaimed Property Act and that those contingency fee agreements constituted the real agreements between the parties. The complaint alleged that since the contingency fee agreements did not comply with N.C. Gen. Stat. § 116B-78 for several reasons, they were unenforceable.

On 16 August 2010, the State Treasurer sent a letter to Equity Solutions declining to issue a declaratory ruling and stating:

> Pursuant to N.C.G.S. § 150B-4 and 20 N.C.A.C. 01F 0205, I have determined that the issuance of a declaratory ruling is undesirable. Therefore, the Petitioner's request is denied for the following reasons:
>
> 1. The subject matter of the request is the subject of active litigation in Wake County between Equity Solutions, the State Treasurer, and the Attorney General.
>
> 2. The request seeks application of N.C.G.S. § 116B-78 to an "Absolute Assignment" and "Conveyance Agreement" without disclosing the full factual setting surrounding these documents, including any representations made to induce the apparent owner to sign these documents, and the manner in which any of these documents may have been used in court proceedings seeking

> disbursement of unclaimed or abandoned funds.
>
> 3. The request involves disputed issues of material fact, including whether the "Absolute Assignment" represents an actual agreement between the parties.
>
> 4. The proposed "Purchase Agreement" offers only blank spaces for its material terms, such as the amount of the finder's fee, and the amount of the costs and expenses to be borne by the apparent owner.

On 15 September 2010, Equity Solutions filed a petition for judicial review of the State Treasurer's denial of its request for a declaratory ruling. On 15 October 2010, the State Treasurer moved to dismiss Equity Solutions' petition for judicial review pursuant to Rules 12(b)(1), (6), and (7) of the Rules of Civil Procedure.

On 18 October 2010, the defendants in the enforcement action, including Equity Solutions, filed an answer, motions to dismiss, a motion for Rule 11 sanctions, counterclaims against the State, and a third-party complaint against State Treasurer Janet Cowell, individually. On 17 November 2010, the State filed a motion to dismiss the third-party complaint against the State Treasurer, individually, and the counterclaims against the State. On 11 September 2012, the trial court entered an order denying the defendants' motions to dismiss in the enforcement action, but

granting the State's motion to dismiss the counterclaims and third-party complaint in the enforcement action.

Also on 11 September 2012, the trial court entered an order affirming the State Treasurer's decision to deny Equity Solutions' request for a declaratory ruling and dismissing Equity Solutions' petition for judicial review. Equity Solutions timely appealed the order to this Court.

## Discussion

"This Court's review of 'a superior court order entered upon review of an administrative agency decision, . . . [involves a] two-fold task: (1) [to] determine whether the trial court exercised the appropriate scope of review and, if appropriate; (2) [to] decide whether the court did so properly.'" *In re Denial of NC IDEA's Refund of Sales*, 196 N.C. App. 426, 433-34, 675 S.E.2d 88, 94-95 (2009) (quoting *Cnty. of Wake v. N.C. Dep't of Env't & Natural Res.*, 155 N.C. App. 225, 233–34, 573 S.E.2d 572, 579 (2002)).

Here, Equity Solutions sought a declaratory ruling from the State Treasurer pursuant to N.C. Gen. Stat. § 150B-4(a) (2009).[1]

---

[1]The General Assembly enacted a revised version of N.C. Gen. Stat. § 150B-4 in 2011 N.C. Sess. Law ch. 398, § 56 (effective June 18, 2011). Given the date of Equity Solutions' request for a declaratory ruling and the State Treasurer's denial of Equity Solutions' request, the revised version of N.C. Gen. Stat. § 150B-4 does not apply to this case.

N.C. Gen. Stat. § 150B-4(a) provides in relevant part: "On request of a person aggrieved, an agency shall issue a declaratory ruling as to the validity of a rule or as to the applicability to a given state of facts of a statute administered by the agency or of a rule or order of the agency, except when the agency for good cause finds issuance of a ruling undesirable."

After the State Treasurer denied Equity Solutions' request for a declaratory ruling, Equity Solutions petitioned the trial court for judicial review. The trial court's review of the State Treasurer's denial was governed by N.C. Gen. Stat. § 150B-51(b) (2009).[2] N.C. Gen. Stat. § 150B-51(b) provides that the trial court may

> reverse or modify the agency's decision . . . if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;

---

[2]The General Assembly's revised version of N.C. Gen. Stat. § 150B-51, enacted in 2011 N.C. Sess. Law ch. 398, § 27, applies "to contested cases commenced on or after" 1 January 2012 and, therefore, does not apply to this case. *Id.*

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary, capricious, or an abuse of discretion.

"During judicial review of an administrative agency's final decision, the substantive nature of each assignment of error dictates the standard of review." *In re Denial*, 196 N.C. App. at 432, 675 S.E.2d at 94. The first four grounds for reversing or modifying an agency's decision provided in N.C. Gen. Stat. § 150B-51(b) give rise to questions of law and the trial court, accordingly, reviews arguments based on those grounds de novo. *In re Denial*, 196 N.C. App. at 433, 675 S.E.2d at 94. However, the fifth and sixth grounds for reversing or modifying an agency's decision set out in N.C. Gen. Stat. § 150B-51(b) involve factual inquiries, and the trial court, therefore, reviews arguments on those two grounds under the whole record test. *In re Denial*, 196 N.C. App. at 433, 675 S.E.2d at 94.

"Under the *de novo* standard of review, the trial court 'consider[s] the matter anew[] and freely substitut[es] its own judgment for the agency's[.]'" *Id.* (quoting *Mann Media, Inc. v. Randolph Cnty. Planning Bd.*, 356 N.C. 1, 13, 565 S.E.2d 9, 17 (2002)). "In conducting 'whole record' review, the trial court must examine all the record evidence in order to determine whether

there is substantial evidence to support the agency's decision." *Id.* "When the trial court reviews an administrative decision under the whole record test, it 'may not substitute its judgment for the agency's as between two conflicting views, even though it could reasonably have reached a different result had it reviewed the matter *de novo*.'" *Id.* (quoting *Watkins v. N.C. State Bd. of Dental Exam'rs*, 358 N.C. 190, 199, 593 S.E.2d 764, 769 (2004)).

In this case, in reviewing the State Treasurer's decision, the trial court concluded (1) that "[t]here is substantial, competent evidence to support each of the State Treasurer's reasons for denying the requested declaratory rulings" and (2) that "[t]he State Treasurer's reasons for denying the request, each standing alone or taken together, constitute 'good cause' for the denial." The trial court further observed that "material factual representations in, and omissions from, Equity Solutions' request . . . presented merely hypothetical circumstances and did not provide 'a given state of facts' regarding genuine and legally valid 'assignments' about which Equity Solutions is presently 'aggrieved' within the meaning of N.C. Gen. Stat. § 150B-4."

The order additionally found:

> Regarding Equity Solutions' proposed new "Purchase Contracts," on the face of the record and Equity Solutions' pleadings, these documents are simply possible future contracts, with several material terms not provided by Equity Solutions. Therefore,

> Equity Solutions is not presently "aggrieved" regarding the possible validity or invalidity of those potential contracts under N.C. Gen. Stat. § 116B-78 (whatever their material terms may end up being), and the State Treasurer therefore could not have lawfully rendered an advisory opinion on that matter as well.

The trial court ultimately concluded that "[t]he State Treasurer's denial of the request for declaratory rulings was not arbitrary, capricious, an abuse of discretion, or otherwise in violation of substantive or procedural law."

I

Equity Solutions first argues that the trial court erred in limiting its decision to whether the State Treasurer properly declined to give a declaratory ruling. Equity Solutions argues that the trial court should have reached -- and this Court should reach -- the merits of Equity Solutions' request for a declaratory ruling and hold that N.C. Gen. Stat. § 116B-78 does not apply to its business model. Equity Solutions contends that the State Treasurer issued a "*de facto* ruling" denying its request on the merits since the State Treasurer "made [her] position very clear, through [her] Complaint in the State Action and by the actions taken by Allen Martin and the Attorney General's Office, that Section 116B-78 *did* apply to Equity Solutions' business arrangements."

However, investigative actions by the Attorney General's Office, letters from a State Treasurer's Office employee to two county clerks of court, and allegations in the enforcement action complaint do not individually or collectively constitute a formal decision by a State agency that is legally binding on Equity Solutions and the State Treasurer, as a formal declaratory ruling would be. *See* N.C. Gen. Stat. § 150B-4(a) ("A declaratory ruling is binding on the agency and the person requesting it unless it is altered or set aside by the court."). Since there has been no declaratory ruling that actually binds Equity Solutions and the State Treasurer, there was no decision on the merits before the trial court or this Court.

Equity Solutions nonetheless contends that because its request sought a decision on a solely legal issue -- whether N.C. Gen. Stat. § 116B-78 applies to its business model as described in its request to the State Treasurer -- and because this Court reviews legal issues de novo, this Court can properly reach the merits of the request for a declaratory ruling. Equity Solutions' argument appears to confuse the concept of a trial de novo, in which a court conducts a "'new trial on the entire case . . . as if there had been no trial in the first instance[,]'" *N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 661 n.3, 599 S.E.2d 888, 895 n.3 (2004) (quoting *Black's Law Dictionary* 1512

(7th ed. 1999)), with the concept of a de novo standard of review "that applies when the trial court acts, as here, in the capacity of an appellate court and reviews an agency decision for errors of law and procedure," *id.* (internal citation omitted). Again, because there has been no agency decision on the merits in this case, there is no decision to which this Court can apply a de novo standard of review.

We, therefore, offer no opinion on the merits of Equity Solutions' request for a declaratory ruling. That issue was not before the trial court and is not before this Court.

II

Equity Solutions next argues that the trial court applied an improper standard of review when reviewing the petition from the State Treasurer's denial of its request for a declaratory ruling. We disagree.

When reviewing the issue whether an agency had good cause to decline to issue a declaratory ruling, the reviewing court must first determine whether the record supports the reasons given by the agency for declining to issue a ruling. *Cf. Charlotte-Mecklenburg Hosp. Auth. v. Bruton*, 145 N.C. App. 190, 191-92, 550 S.E.2d 524, 525-26 (2001) (setting out pertinent facts in record supporting agency's determination that good cause existed to decline to issue declaratory ruling). If the reviewing court

determines there is record support for the reason given by the agency, the reviewing court then reviews de novo whether the reason given constitutes good cause to decline to issue a ruling. *Id.* at 193, 550 S.E.2d at 526.

Here, the trial court's order detailed the facts in the record supporting the State Treasurer's reasons for declining to issue a ruling. The court then determined that there was "substantial, competent evidence to support each of the State Treasurer's reasons for denying the requested declaratory rulings." Thus, the order demonstrates that the court properly reviewed the record and found there was evidence supporting the State Treasurer's reasons for declining to issue a ruling.

After determining that the record supported the reasons given by the State Treasurer, the trial court further concluded, in a separately numbered conclusion of law, that the "State Treasurer's reasons for denying the request, each standing alone or taken together, constitute 'good cause' for the denial." Given this language, we hold that the trial court properly applied a de novo standard of review to the issue whether the reasons set forth by the trial court constituted good cause to decline to issue a ruling. We note, however, that the better practice is for a trial court reviewing an agency decision to expressly state which

standard of review it has applied to each distinct issue decided in an order.

Equity Solutions nonetheless points to the language in the trial court's order stating that the court "reviewed the whole record to determine whether there is substantial, competent evidence to support the denial of the request for declaratory rulings" in support of its contention that the court erroneously applied the whole record test rather than de novo review. However, this language supports our determination that the trial court first properly concluded that the record contained evidence supporting the State Treasurer's reasons for declining to issue a ruling, and it does not demonstrate that the trial court erroneously applied whole record review to the legal issue before the trial court: whether the reasons given by the State Treasurer constituted good cause. The trial court, therefore, applied the proper standard of review.

### III

Equity Solutions next contends that even if the trial court did apply the proper standard of review, the court erred in affirming the State Treasurer's determination that good cause existed to decline to issue a ruling. We, like the trial court, review this issue de novo. *Id.*

The first three reasons given by the State Treasurer in declining to issue a ruling were (1) that the subject matter of the request was "the subject of active litigation in Wake County between Equity Solutions, the State Treasurer, and the Attorney General"; (2) that the request failed to disclose the "full factual setting" of Equity Solutions' business model, including "any representations made to induce the apparent owner" to sign the conveyance and assignment agreements used by Equity Solutions; and (3) that the request involved "disputed issues of material fact," including whether the assignment agreements represented "an actual agreement between the parties."  The trial court agreed.

Equity Solutions has conceded on appeal that this declaratory ruling action concerns "the same subject matter" as the enforcement action and that the issues presented in its request for a declaratory ruling will probably be decided in the course of the enforcement action.  In addition, in its request for a declaratory ruling, Equity Solutions did not disclose that it entered into contingency fee agreements with the owners of surplus funds prior to entering into subsequent conveyance and assignment agreements. Equity Solutions later filed an affidavit of its vice president in superior court that acknowledged its practice of entering into an initial "Authority to Represent & Contingency Fee Agreement" with the apparent owners.  It was these contingency fee agreements that

the Attorney General and State Treasurer contended, in the enforcement action, constituted, in whole or in part, the actual agreements between the parties.

This Court has previously held that an agency had good cause to decline to issue a ruling where the agency had already issued a ruling on the same matter and issuing a second ruling would, therefore, constitute a waste of administrative resources. *Id.* at 192-93, 550 S.E.2d at 526-27; *Catawba Mem'l Hosp. v. N.C. Dep't of Human Res.*, 112 N.C. App. 557, 563, 436 S.E.2d 390, 393 (1993). Although the State Treasurer had not, in this case, already decided the issue presented in Equity Solutions' request, we believe that the principle underlying the holdings in *Charlotte-Mecklenburg Hospital* and *Catawba Memorial Hospital* is also applicable here.

It would be a waste of administrative resources for the State Treasurer to issue a ruling on a matter that would likely be judicially determined during the course of pending litigation between Equity Solutions and the State Treasurer. This is particularly true since the trial court ruling on the issues in the enforcement action will have the benefit of a fully developed factual record following discovery, while Equity Solutions' request to the State Treasurer presented only an alleged factual basis for a ruling that did not mention the contingency fee agreements that Equity Solutions has since admitted were part of

its business model.  Indeed, the State Treasurer was aware that the request submitted by Equity Solutions presented the State Treasurer with an inadequate record from which to issue a ruling.

Equity Solutions, however, asserts that the State Treasurer should not be allowed to "manufacture 'good cause' to avoid issuing a ruling" by, as here, "filing a complaint on the same subject matter *after* receiving the request for a ruling."  However, the record shows that the Attorney General and State Treasurer were openly investigating Equity Solutions at least one month prior to the time of Equity Solutions' request and that Equity Solutions was aware of that investigation.  We do not believe that the Attorney General or the State Treasurer's discretion in determining when to file their enforcement action resulting from months of investigation should have been curtailed because of the timing of Equity Solutions' decision to request a declaratory ruling from the State Treasurer.  The State Treasurer was not required to allow Equity Solutions to preempt the enforcement proceedings by requesting a declaratory ruling.

With respect to the issue of a factual dispute, Equity Solutions contends that the "sole purpose" of N.C. Gen. Stat. § 150B-4 is for an agency to aid an aggrieved person by applying the statute to a "given set of facts."  Equity Solutions asserts that "[t]he agency is not charged with a broader authority to

investigate the 'given set of facts' to determine whether other legal issues exist or to otherwise assess the legal validity or viability of the proposed transaction . . . ."

However, in *Catawba Memorial Hospital*, this Court determined that the set of facts provided by the petitioner in its belated request for a declaratory ruling would not control where the agency had already closed the record of a contested case hearing on the same matter, and the agency had determined, in the contested case, the actual facts to be inconsistent with the set of facts provided in the petitioner's request. *See* 112 N.C. App. at 563, 436 S.E.2d at 393 ("Whereas a declaratory ruling by definition involves the application of a statute or agency rule to a given state of facts, the facts regarding [the petitioner's] proposed surgical services were established by the record in the contested case."). Similarly, here, the State Treasurer was not obligated to ignore the existence of the information regarding this same matter that had been discovered during the investigation that led to the enforcement action when deciding whether good cause existed to decline to issue a ruling on Equity Solutions' request.

Equity Solutions also cites *Hope-A Women's Cancer Ctr., P.A. v. N.C. Dep't of Health & Human Servs.*, 203 N.C. App. 276, 691 S.E.2d 421 (2010), *disc. review denied*, 365 N.C. 87, 706 S.E.2d 254 (2011), in support of its argument that its failure to provide

a more factually complete request for a declaratory ruling did not constitute good cause for the State Treasurer to decline to issue a ruling. However, the Court in *Hope* did not address whether circumstances existed, in that case, that would have constituted good cause to deny issuing a ruling since the agency, in fact, issued a ruling on the relevant request. *Id.* at 279, 282, 691 S.E.2d at 423, 425. *Hope* does not, therefore, support Equity Solutions' argument.

We, accordingly, hold that the State Treasurer, and the trial court, properly determined that good cause existed to decline to issue a ruling on Equity Solutions' request, based on the first three grounds asserted by the State Treasurer, as it related to the business practices already used by Equity Solutions at the time of the request.

The issue remains whether the State Treasurer had good cause to decline to issue a ruling as to the business practice that Equity Solutions planned to employ in the future. With respect to the agreements that Equity Solutions' request stated that it proposed to use, the State Treasurer declined to issue a ruling regarding the propriety of those agreements because "[t]he proposed 'Purchase Agreement[]' offer[ed] only blank spaces for its material terms, such as the amount of the finder's fee, and the amount of the costs and expenses to be borne by the apparent

owner."   As the State Treasurer noted, the purchase agreement Equity Solutions claimed it planned to use in the future had blank spaces for material terms, including the percentage of the surplus funds which would be paid by Equity Solutions to the apparent owner in exchange for the apparent owner's selling Equity Solutions the owner's right to the funds -- in other words, Equity Solutions' fee.

In *Diggs v. N.C. Dep't of Health & Human Servs.*, 157 N.C. App. 344, 345, 578 S.E.2d 666, 667 (2003), the petitioner was a custodial parent of three children and had previously been the caretaker of her niece, and she petitioned an agency for a declaratory ruling that the practice of calculating the debt owed to the State when an adult caretaker accepts payment of benefits under certain government programs was invalid.   In order to demonstrate that she was a "person aggrieved" under N.C. Gen. Stat. § 150B-4, the petitioner set out "two hypothetical situations involving whether child support paid by the biological father of petitioner's children . . . pursuant to a court order for the support of their biological children may be taken by the State for reimbursement of earlier and separate public assistance grants made solely for the use and benefit of petitioner's niece . . . ." *Diggs*, 157 N.C. App. at 347, 578 S.E.2d at 668.

On appeal, this Court held that the petitioner was not entitled to a declaratory ruling since she was "not presently aggrieved." *Id.* at 348, 578 S.E.2d at 668. The Court reasoned that the petitioner's request presented merely hypothetical scenarios that were not certain to occur and, therefore, the petitioner could not show that her legal rights had, in some way, been impaired. *Id.*, 578 S.E.2d at 668-69. Because the agency had, nonetheless, issued a ruling on the petitioner's request, the court further held that "the request was ineffective to trigger the issuance of a declaratory ruling, and the declaratory ruling has no effect, binding or otherwise, on petitioner . . . ." *Id.* at 349, 578 S.E.2d at 669.

Similarly, here, the State Treasurer could properly determine that good cause existed to deny Equity Solutions' request for a declaratory ruling as to the potential future agreements since, given the missing material terms of the contracts, any ruling on whether the contracts were in compliance with N.C. Gen. Stat. § 116B-78 would be purely hypothetical. Notably, the allegations in the enforcement action that the agreements actually used by Equity Solutions in the past violated N.C. Gen. Stat. § 116B-78 are focused, in part, on allegations that the fees charged by Equity Solutions exceeded the statutory limit for property finder's fees.

Yet, the proposed purchase agreements did not specify the amount of the finder's fee.

In the absence of a proposed agreement setting out all terms material to the request for a declaratory ruling, the State Treasurer did not have authority to issue a ruling because, as in *Diggs*, she was presented only with a hypothetical scenario, and Equity Solutions could not show that any of its legal rights were legally impaired. We, therefore, hold that the State Treasurer had good cause to decline to issue a ruling as to the future purchase agreements based upon the fourth ground provided by the State Treasurer.

In sum, the trial court applied the proper standard of review and did not err in affirming the State Treasurer's decision to decline to issue a ruling on Equity Solutions' request based upon all four grounds provided by the State Treasurer. Consequently, we affirm the trial court's order.

Affirmed.

Chief Judge MARTIN and Judge STROUD concur.