IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-306

No. COA20-550

Filed 6 July 2021

Iredell County, No. 06 CRS 55851

STATE OF NORTH CAROLINA

v.

O.C. BILLINGS

Appeal by defendant from order entered 2 March 2020 by Judge Joseph N. Crosswhite in Iredell County Superior Court. Heard in the Court of Appeals 27 April 2021.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Sonya Calloway-Durham, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender James R. Grant, for defendant-appellant.*

ZACHARY, Judge.

¶ 1    Defendant O.C. Billings appeals from the trial court's order continuing his enrollment in satellite-based monitoring following our Supreme Court's opinion in *State v. Grady* ("*Grady III*"), 372 N.C. 509, 831 S.E.2d 542 (2019). After careful review, we vacate the trial court's order.

## Background

¶ 2    On 28 September 2006, Defendant pleaded guilty to 14 counts of taking

indecent liberties with a child, and was sentenced to 31 to 38 months of imprisonment.

¶ 3        Thereafter, the General Assembly established the state's satellite-based monitoring program for sex offenders. *See generally* N.C. Gen. Stat. § 14-208.40 *et seq.* (2019); *see also* 2007 N.C. Sess. Laws 340, 340–48, ch. 213. The program classifies sex offenders into several different categories, among them the category of "recidivist" as defined by § 14-208.6(2b). N.C. Gen. Stat. § 14-208.40(a)(1). If a trial court finds that an offender is a recidivist, "the court shall order the offender to enroll in satellite-based monitoring for life." *Id.* §§ 14-208.40A(c), -208.40B(c). On 29 April 2009, following a bring-back hearing pursuant to N.C. Gen. Stat. § 14-208.40B, the trial court classified Defendant as a recidivist and ordered him to enroll in satellite-based monitoring for the remainder of his natural life.

¶ 4        By opinion issued on 16 August 2019, our Supreme Court in *Grady III* considered both facial and as-applied challenges to the constitutionality of the state's satellite-based program with respect to "individuals who are subject to mandatory lifetime [satellite-based monitoring] based solely on their status as a statutorily defined 'recidivist' who have completed their prison sentences and are no longer supervised by the State through probation, parole, or post-release supervision." 372 N.C. at 522, 831 S.E.2d at 553 (footnote omitted). The Court concluded that satellite-based monitoring is "unconstitutional as applied to all" such individuals. *Id.* at 511,

831 S.E.2d at 547.

Our Supreme Court recognized that "unsupervised individuals . . . , unlike probationers and parolees, are not on the continuum of possible criminal punishments and have no ongoing relationship with the State." *Id.* at 531, 831 S.E.2d at 559–60 (citation and internal quotation marks omitted). As a result, for this class of unsupervised individuals, "constitutional privacy rights, including [their] Fourth Amendment expectations of privacy, have been restored." *Id.* at 534, 831 S.E.2d at 561. Among its reasons for concluding that the satellite-based program is unconstitutional as applied to this class of individuals, the Court observed that "the provisions governing recidivists present no opportunity for determinations by the court regarding what particular risk, if any, is posed by the individual and whether a particular duration of [satellite-based monitoring] will, in any meaningful way, serve the State's interest in combating that risk." *Id.* at 546, 831 S.E.2d at 569. The Court thus concluded that "the Fourth Amendment, which secures the privacies of life against arbitrary power and places obstacles in the way of a too permeating police surveillance, prohibits the mandatory imposition of lifetime [satellite-based monitoring] on this class of individuals." *Id.* (citation and internal quotation marks omitted).

Accordingly, our Supreme Court fashioned a remedy for Mr. Grady and all similarly situated individuals that was "neither squarely facial nor as-applied." *Id.*

The Court explained the facial aspects of its holding:

> [O]ur holding is facial in that it is not limited to [Mr. Grady]'s particular case but enjoins application of mandatory lifetime [satellite-based monitoring] to other unsupervised individuals when the [satellite-based monitoring] is authorized based solely on a "recidivist" finding that does not involve a sexually violent predator classification, an aggravated offense, or statutory rape or statutory sex offense with a victim under the age of thirteen by an adult.

*Id.* at 547, 831 S.E.2d at 570.

¶ 7    The Department of Public Safety developed two lists of individuals whose enrollments in satellite-based monitoring were potentially affected by our Supreme Court's opinion in *Grady III*.[1] Defendant was named in one of those lists. On 26 November 2019, the North Carolina Conference of District Attorneys circulated a "Best Practices" memo to all of the elected district attorneys in the state, providing guidance on how to conduct "Satellite[-]Based Monitoring Review Hearings" for the named individuals in light of *Grady III*. In accordance with this memo, the State scheduled a satellite-based monitoring review hearing in Defendant's case. The parties stipulate that the State served Defendant with notice of the hearing, but did not file any written motion, application, or other pleading.

¶ 8    On 2 March 2020, Defendant's satellite-based monitoring review came on for

---

[1] The criteria followed by the Department of Public Safety in the creation of these lists is not clear from the record.

hearing before the Honorable Joseph N. Crosswhite in Iredell County Superior Court. The State presented the trial court with a newly completed Static-99R risk assessment, which indicated that Defendant had a "Well Above Average Risk" of recidivism. The State also provided an overview of Defendant's criminal record: the prosecutor described the 2006 incident that gave rise to the 14 charges to which Defendant pleaded guilty, the events surrounding Defendant's separate 2004 conviction for taking indecent liberties with children, and Defendant's several other prior convictions for non-sexual offenses.

¶ 9        Following its presentation of evidence, the State requested that the trial court impose lifetime satellite-based monitoring on Defendant, asserting that the Supreme Court's opinion in *Grady III* did not bar such in Defendant's case:

> [THE STATE]: I would ask the Court to consider ordering him to comply with lifetime satellite-based monitoring based on the Static 99 evaluation, the risk of recidivism, and the threat that he's demonstrated in these different communities in the past.
>
> THE COURT: Yes, ma'am, and let me ask you this. I just want to make sure we're clear. If the Court does order lifetime satellite-based monitoring, is that consistent with that recent decision?
>
> [THE STATE]: Your Honor, the recent decision in Grady applies only to lifetime satellite-based monitoring that's ordered based on solely recidivism. That applies only when there's been an order based on the statute that says if a person is a recidivist, he may automatically receive lifetime satellite-based monitoring. And I think that holding does

not bar the Court from making an independent inquiry through the Static 99 and determining that the defendant is high risk based on that evaluation and ordering lifetime satellite-based monitoring, or ordering satellite-based monitoring for a period of years. I think the Court is free to do either of those things.

THE COURT: Okay, thank you very much.

¶ 10 After considering the arguments of Defendant, who appeared *pro se*, the trial court ordered Defendant to "continue to maintain the satellite-based monitoring" based on Defendant's Static-99R score and "the totality of these circumstances[.]" Defendant then attempted to give oral notice of appeal in open court, arguing that as a result of the *Grady III* decision, the trial court lacked authority to order him to submit to lifetime satellite-based monitoring.

¶ 11 The trial court entered a written order that states: "DEFENDANT SHALL REMAIN ON [SATELLITE-BASED MONITORING] DUE TO THE STATIC 99 SCORE OF 8 AND [HIS] CRIMINAL HISTORY." On 12 June 2020, pursuant to the 30 May 2020 order of the Chief Justice of the Supreme Court of North Carolina extending filing deadlines due to the COVID-19 pandemic, Defendant timely filed his notice of appeal from the 2 March 2020 order.

### Discussion

¶ 12 Defendant raises four issues on appeal. First, Defendant argues that the trial court lacked jurisdiction to conduct a satellite-based monitoring hearing and to impose satellite-based monitoring on him on grounds other than recidivism. Then,

assuming *arguendo* that the trial court did possess jurisdiction to impose satellite-based monitoring on other grounds, Defendant argues that the trial court erred by (1) ordering satellite-based monitoring when the State failed to meet its burden of showing reasonableness under the Fourth Amendment; (2) ordering Defendant to remain subject to satellite-based monitoring for the remainder of his natural life, as opposed to a term of years, in the absence of any statutory authority permitting such an order; and (3) conducting a satellite-based monitoring hearing without appointing counsel to represent Defendant, as required by N.C. Gen. Stat. §§ 7A-451(a)(18) and 14-208.40B(b).

¶ 13 After careful review, we conclude that the trial court lacked jurisdiction to conduct the 2 March 2020 hearing. Accordingly, we vacate the trial court's order without prejudice to the State's ability to file an application for satellite-based monitoring.

## I. *Standard of Review*

¶ 14 "Whether a trial court has subject matter jurisdiction is a question of law," which this Court reviews de novo. *State v. Clayton*, 206 N.C. App. 300, 303, 697 S.E.2d 428, 431 (2010) (citation omitted). When an appellate court conducts de novo review, "the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (citation and internal quotation marks omitted).

## II.   Grady III *Relief*

¶ 15        As an initial matter, the State argues that Defendant is not entitled to relief under *Grady III*. In so arguing, the State misconstrues the basis for our Supreme Court's ruling in that case.

¶ 16        As stated above, in *Grady III*, our Supreme Court concluded that satellite-based monitoring was not only unconstitutional as applied to that particular defendant, but also as applied to other similarly situated individuals. 372 N.C. at 546, 831 S.E.2d at 569. Accordingly, the Court enjoined *all*

> applications of mandatory lifetime [satellite-based monitoring] of unsupervised individuals authorized solely on a finding that the individual is a recidivist and without any findings that the individual was convicted of an aggravated offense, or is an adult convicted of statutory rape or statutory sex offense with a victim under the age of thirteen, or is a sexually violent predator.

*Id.* at 547, 831 S.E.2d at 570.

¶ 17        At a bring-back hearing in 2009, Defendant was enrolled in mandatory lifetime satellite-based monitoring based solely on a finding that he was a recidivist, and without any findings that he was convicted of an aggravated offense, or was an adult convicted of statutory rape or statutory sex offense with a victim under the age of thirteen, or was classified as a sexually violent predator. Defendant is not currently under any form of post-release supervision, and the record on appeal does not contain any indication that he was at the time of the 2 March 2020 hearing. He is thus

entitled to relief under *Grady III*.

¶ 18      Nonetheless, the State asserts that the 2 March 2020 hearing remedied any deficiencies in the original imposition of satellite-based monitoring on Defendant, and removed him from the *Grady III* class. The State maintains that Defendant "1) was provided reasonable opportunity for termination, via the March 2020 hearing, wherein 2) the Superior Court considered both his individualized assessment and the characteristics of his crimes in rendering a decision as to whether to maintain or modify his prior [satellite-based monitoring] order." Thus, the State claims, Defendant is no longer entitled to relief under *Grady III*.

¶ 19      The State's argument is inapposite. Under *Grady III*, the State was enjoined from the continued application of unconstitutional satellite-based monitoring of Defendant. That the State subsequently chose to conduct a "review hearing" is immaterial. The State did not invoke the jurisdiction of the trial court for the 2 March 2020 hearing during which Defendant was ostensibly provided with the *post hoc* process that the State claims disqualifies him from relief under *Grady III*. The State cannot avoid *Grady III*, which enjoined the unconstitutional application of satellite-based monitoring in cases such as Defendant's, by devising a procedure that itself violates Defendant's rights.

¶ 20      Pursuant to the plain text of our Supreme Court's opinion, Defendant falls within the class of individuals eligible for relief under *Grady III*. Hence, the State

was enjoined from subjecting Defendant to the continued application of satellite-based monitoring for the remainder of his life. If the State wished to reenroll Defendant in satellite-based monitoring, it had to proceed in a manner consistent with its statutory authority and procedural obligations. For the following reasons, we conclude that it did not.

### III. *Statutory Jurisdiction*

¶ 21 Defendant argues that the trial court lacked jurisdiction to conduct the 2 March 2020 hearing because (1) neither *Grady III* nor any statute permits the State to seek a rehearing of its application for satellite-based monitoring of a defendant eligible for relief under *Grady III*; and (2) "[t]he State filed no motion, application, or other pleading invoking the trial court's jurisdiction under a rule of criminal or civil procedure."

¶ 22 "Jurisdiction is the legal power and authority of a court to make a decision that binds the parties to any matter properly brought before it. . . . A universal principle as old as the law is that the proceedings of a court without jurisdiction of the subject matter are a nullity." *State v. Wooten*, 194 N.C. App. 524, 527, 669 S.E.2d 749, 750 (2008) (citations and internal quotation marks omitted), *disc. review denied and cert. dismissed*, 363 N.C. 138, 676 S.E.2d 308 (2009).

¶ 23 Two statutes confer jurisdiction upon a trial court to enroll a qualifying individual in satellite-based monitoring. Section 14-208.40A requires the trial court

to conduct a satellite-based monitoring hearing "during the sentencing phase" of a criminal proceeding following a conviction. N.C. Gen. Stat. § 14-208.40A(a). This section is plainly inapplicable to Defendant's case, because Defendant was initially enrolled in the satellite-based monitoring program approximately two and a half years after he was convicted and sentenced.

¶ 24     Section 14-208.40B similarly fails to provide a statutory basis for the State's "satellite-based monitoring review hearing" that could apply in Defendant's case. This section confers jurisdiction upon a trial court to conduct a satellite-based monitoring hearing "[w]hen an offender is convicted of a reportable conviction as defined by G.S. 14-208.6(4), *and there has been no determination by a court on whether the offender shall be required to enroll in satellite-based monitoring*[.]" *Id.* § 14-208.40B(a) (emphasis added). The plain language of this statute indicates that it does not apply where there *has already* been a "determination by a court on whether the offender shall be required to enroll in satellite-based monitoring," *id.*, as happened in this case in 2009 when Defendant was initially enrolled in satellite-based monitoring following his "bring-back" hearing pursuant to § 14-208.40B(a).

¶ 25     Moreover, our precedent makes clear that the State cannot move for reconsideration of satellite-based monitoring under § 14-208.40B. In *Clayton*, the defendant pleaded guilty in April 2008 to two counts of taking indecent liberties with a child and received a sentence that was suspended upon a term of probation. 206

N.C. App. at 301, 697 S.E.2d at 430. On 19 May 2008, pursuant to § 14-208.40B, the defendant was brought back before the trial court for a satellite-based monitoring hearing, at which the trial court determined that the defendant was not subject to satellite-based monitoring. *Id.* The defendant was subsequently charged with violating his probation in July 2008. *Id.* At the probation violation hearing on 5 March 2009, the defendant's satellite-based monitoring status was reevaluated, and at that time, the trial court ordered him to enroll in satellite-based monitoring for a period of ten years. *Id.* at 301–02, 697 S.E.2d at 430.

¶ 26 On appeal, this Court observed that there was "no indication that between 19 May 2008 and 5 March 2009 [the] defendant was convicted of another 'reportable conviction' which could trigger another [satellite-based monitoring] hearing based upon the new conviction." *Id.* at 305, 697 S.E.2d at 432. We thus vacated the 2009 satellite-based monitoring order, in that "[t]he trial court did not have any basis to conduct another [satellite-based monitoring] hearing, where it had already held [a satellite-based monitoring] hearing based upon the same reportable convictions in 2008." *Id.*

¶ 27 As in *Clayton*, the record in the instant case reflects no new "reportable

conviction"[2] between the 29 April 2009 order enrolling Defendant in mandatory lifetime satellite-based monitoring and the 2 March 2020 "review" hearing upon which the trial court could base jurisdiction under § 14-208.40B(a). *See* N.C. Gen. Stat. § 14-208.6(4) (defining a "[r]eportable conviction" for the purposes of the sex offender and public protection registration programs). Thus, the trial court "did not have any basis to conduct another [satellite-based monitoring] hearing, where it had already held [a satellite-based monitoring] hearing based upon the same reportable convictions" in 2009. *Id.*

¶ 28        Additionally, the State did not validly invoke the court's jurisdiction to conduct the 2 March 2020 hearing. The satellite-based monitoring program is "a civil regulatory scheme," of which satellite-based monitoring hearings and proceedings are part. *State v. Brooks*, 204 N.C. App. 193, 194, 693 S.E.2d 204, 206 (2010) (citation and internal quotation marks omitted). Under the North Carolina Rules of Civil Procedure, "jurisdiction is dependent upon the existence of a valid motion, complaint,

---

[2] At the 2 March 2020 hearing, the State indicated that Defendant had been "charged with first degree rape and first degree forcible sex offenses and possession of a firearm by a felon" and "prosecuted contemporaneously for that in Federal court." According to the State, Defendant "was convicted of possessing a firearm by a felon in Federal court and the state charges were dismissed, so he was not convicted of the rape or any sex offense at that time." There is no documentation of this proceeding in the record on appeal. But in any event there is also no indication that Defendant was *convicted* of any new offense that would trigger another satellite-based monitoring hearing under § 14-208.40B(a). As the plain text of § 14-208.40B(a) refers only to a "reportable conviction[,]" rather than to an arrest or an indictment, we may reach no other conclusion. N.C. Gen. Stat. § 14-208.40B(a).

petition, or other valid pleading[.]" *In re McKinney*, 158 N.C. App. 441, 443, 581

S.E.2d 793, 795 (2003).

> *A court* cannot undertake to adjudicate a controversy on its
> own motion; rather, it *can adjudicate a controversy* only
> when a party presents the controversy to it, and then, *only
> if it is presented in the form of a proper pleading*. Thus,
> before a court may act there must be some appropriate
> application invoking the judicial power of the court with
> respect to the matter in question.

*Id.* at 444, 581 S.E.2d at 795 (citation omitted); *accord State v. Turner*, 262 N.C. App.

155, 819 S.E.2d 415, 2018 WL 4997420, at *2 (2018) (unpublished).

¶ 29        In *Turner*, the State argued before the trial court that the defendant's

conviction for statutory rape constituted an aggravated offense, mandating lifetime

satellite-based monitoring of the defendant. 2018 WL 4997420, at *1. However, a

subsequent risk assessment placed the defendant in the "Moderate-Low" risk

category, and the trial court entered an order stating that the defendant was not

required to enroll in satellite-based monitoring. *Id.* Months later, another satellite-

based monitoring hearing was held, although the record on appeal contained no

information indicating how that second hearing was initiated. *Id.* At the second

hearing, the State argued that the trial court had previously misinterpreted case law

regarding statutory rape, and the trial court set aside the earlier order and entered

a new order imposing lifetime satellite-based monitoring upon the defendant. *Id.*

¶ 30        On appeal, this Court vacated the second satellite-based monitoring order for

lack of subject-matter jurisdiction. *Id.* at *3. Although we agreed that the trial court's initial analysis of statutory rape was erroneous, pursuant to *Clayton*, "once the trial court entered the erroneous order, it did not have the authority to *sua sponte* modify the prior order." *Id.* at *2. The State argued in *Turner*—as it argues in present case—that it could have properly invoked the jurisdiction of the trial court by filing pleadings such as a Rule 60 motion, but we rejected the State's argument because "[t]he record on appeal d[id] not contain any motion filed by the State[.]" *Id.* Although *Turner* is an unpublished opinion and therefore not binding legal authority, *see* N.C.R. App. P. 30(e)(3), we nevertheless find its reasoning persuasive and applicable to the issue before us, and we hereby adopt and employ that reasoning here.

¶ 31        In the instant case, the State has stipulated in the record on appeal that it "did not file a written motion, application, or other pleading." At oral argument, Defendant's counsel conceded that a hypothetical motion, such as a Rule 60 motion or a motion in the cause, may properly invoke the jurisdiction of the trial court "in some case" under similar post-*Grady III* circumstances. However, defense counsel further asserted that in the absence of any such motion, the State does not actually invoke the trial court's jurisdiction. We agree.

¶ 32        "We need not speculate about whether any hypothetical motions could have granted the trial court subject-matter jurisdiction to enter the [2 March 2020] order. In the absence of any motion, the trial court lacked subject-matter jurisdiction to

conduct the [2 March 2020] hearing and the [2 March 2020] order is void." *Turner*, 2018 WL 4997420, at \*3. Accordingly, we "vacate the trial court's [satellite-based monitoring] order without prejudice to the State's ability to file [an] application" for satellite-based monitoring, consistent with this opinion. *State v. Bursell*, 372 N.C. 196, 201, 827 S.E.2d 302, 306 (2019).

### *Conclusion*

¶ 33      For the foregoing reasons, the trial court did not have jurisdiction to conduct the 2 March 2020 hearing. Accordingly, we vacate the trial court's order without prejudice to the State's ability to file an application for satellite-based monitoring.

VACATED.

Chief Judge STROUD concurs.

Judge TYSON concurs in the result by separate opinion.

TYSON, Judge, concurring in the result only.

Defendant argues and this Court agrees the trial court lacked subject matter jurisdiction to conduct a rehearing on Defendant's satellite-based monitoring. The parties stipulated the State served Defendant with a letter providing purported notice of the hearing, but "did not file a written motion, application, or other pleading" with the court.

As noted in the majority's opinion, Defendant's counsel conceded at oral argument a "motion, such as a Rule 60 motion or a motion in the cause, may properly invoke the jurisdiction of the trial court 'in some case' under similar post-*Grady III* circumstances." *See* N.C. Gen. Stat. § 1A-1, Rule 60 (2019); *see generally J&M Aircraft Mobile T-Hangar, Inc. v. Johnston Cty. Airport Auth.*, 166 N.C. App. 534, 539, 603 S.E.2d 348, 351 (2004) (a motion in the cause is the proper action to set aside a judgment pursuant to N.C. Gen. Stat. § 1A–1, Rule 60). In the absence of any such motion, the State did not invoke the trial court's subject matter jurisdiction.

We unanimously agree the trial court lacked subject matter jurisdiction to conduct the 2 March 2020 hearing as the *ratio decidendi* of this appeal. The order therefrom must be vacated without prejudice to the State's ability to invoke the trial court's jurisdiction and file an application for satellite-based monitoring. *State v. Bursell*, 372 N.C. 196, 201, 827 S.E.2d 302, 306 (2019) (vacating "the trial court's [satellite-based monitoring] order without prejudice to the State's ability to file [an] application" for satellite-based monitoring).

Further analysis or discussion beyond the dispositive determination to vacate without prejudice is *obiter dicta.* *See Catawba Memorial Hospital v. N.C. Dept. Human Resources*, 112 N.C. App. 557, 561, 436 S.E.2d 390, 392 (1993) (finding the addressed issue "to be dispositive and, in view of our decisions with respect thereto, conclud[ing] that it is unnecessary to address the remainder"). I concur in the result to vacate the order without prejudice.